01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  SENKA TAJIC,                          )   CASE NO. C07-0614-JLR
                                          )
09          Plaintiff,                    )
                                          )
10     v.                                 )
                                          )   REPORT AND RECOMMENDATION
11  MICHAEL J. ASTRUE,                    )   RE: SOCIAL SECURITY
    Commissioner of Social Security,      )   DISABILITY APPEAL
12                                         )
            Defendant.                     )
13  _____ )

14          Plaintiff Senka Tajic proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  discontinued plaintiff's Disability Insurance (DI) and Supplemental Security Income (SSI) benefits

17  after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision,

18  the administrative record (AR), and all memoranda of record, it is recommended that this matter

19  be REMANDED for further administrative proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02     Plaintiff was born on XXXX, 1962.[1]  She obtained a bachelor's degree in sociology and

03 worked as a high school teacher in Bosnia and/or Croatia.  (AR 101, 105.)  Plaintiff came to the

04 United States as a refugee and completed a master's degree in teaching, but did not obtain a

05 teaching certificate.  ( *Id.*)  She previously worked in this country as a day care teacher and

06 caregiver for her mother.  (*Id.* and AR 91-92.)

07     On July 22, 1999, plaintiff was found to be disabled as of March 1, 1999 and entitled to

08 SSI benefits due to her severe depressed mood and psychotic thought process.  (AR 19, 30.)

09 Although an April 2002 application for DI benefits was initially denied, plaintiff subsequently

10 attained disability insurance status through her continued work and earned income as a caregiver.

11 (AR 88-95.)

12     On October 8, 2003, the Social Security Administration (SSA) determined that plaintiff's

13 impairments had improved, that her condition was stable with counseling and medication, and that

14 she was capable of work activity beginning October 1, 2003.  (AR 28, 30-33.)  Plaintiff sought

15 reconsideration and the decision terminating her benefits was upheld.  (AR 29, 39-50.)

16     Plaintiff timely sought a hearing and appeared before ALJ Marguerite Schellentrager on

17 March 15, 2006.  (AR 680-720.)  Vocational expert Michael Swanson also appeared at the

18 hearing.  On May 19, 2006, ALJ Schellentrager issued a decision finding plaintiff not disabled.

19 (AR 19-27.)

20

21     [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the

22 General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01    Plaintiff timely appealed to the Appeals Council, which denied review (AR 13-16), making

02  the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision

03  of the Commissioner to this Court.

04  **JURISDICTION**

05    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

06  **DISCUSSION**

07    In determining whether a claimant's disability benefits should be terminated, Social

08  Security regulations outline an eight-step evaluation process for a DI claim and a seven-step

09  evaluation process for a SSI claim. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  Step one for the DI

10  claim asks whether the claimant is engaging in substantial gainful activity (SGA).

11  § 404.1594(f)(1).  SGA is not considered in evaluating the SSI claim.  Step two for the DI claim

12  and step one for the SSI claim asks whether a claimant's impairments meet or equal the criteria

13  for a listed impairment.  §§ 404.1594(f)(2), 416.994(b)(5)(i).  If the criteria is met, disability

14  continues; if not, the analysis proceeds to the next step.

15    At step three for the DI claim and step two for the SSI claim, it must be determined

16  whether medical improvement has occurred.  §§ 404.1594(f)(3), 416.994(b)(5)(ii).  If medical

17  improvement has occurred, the analysis proceeds to the fourth step for the DI claim and the third

18  step for the SSI claim.  If there has been no medical improvement, the analysis proceeds to the

19  fifth step for the DI claim and the fourth step for the SSI claim.

20    Step four for the DI claim and step three for the SSI claim look to whether medical

21  improvement is related to the ability to work.  §§ 404.1594(f)(4), 416.994(b)(5)(iii).  If found

22  related, the analysis proceeds to the sixth step for the DI claim and the fifth step for the SSI claim.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01        At step five for the DI claim and step four for the SSI claim, two groups of exceptions to

02  medical improvement are considered.  §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If no exceptions

03  apply, disability continues.  If one of the first group of exceptions apply, the analysis proceeds to

04  the next step.  If one of the second group of exceptions applies, the claimant's disability is found

05  to have ended.

06        The severity of the combination of the claimant's impairments is considered at step six for

07  the DI claim and step five for the SSI claim.  §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the

08  combination of impairments do not significantly limit the ability to perform basic work activities,

09  the claimant is no longer deemed disabled.  If the claimant remains significantly limited, the

10  analysis proceeds to the next step.

11        At step seven for the DI claim and step six for the SSI claim, the Commissioner must

12  assess residual functional capacity (RFC) and determine whether the claimant has demonstrated

13  an inability to perform past relevant work.  §§ 404.1594(f)(7), 416.994(b)(5)(vi).  Finally, if the

14  claimant cannot perform past relevant work, the Commissioner bears the burden at step eight for

15  the DI claim and step seven for the SSI claim of demonstrating that the claimant can perform other

16  work. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

17        In this case, the ALJ found that plaintiff did not engage in SGA through October 1, 2003,

18  the date the Commissioner deemed her disability to have ended.  The ALJ further found that

19  plaintiff did not develop any additional impairments and did not have any impairment or

20  combination of impairments that met or equaled the criteria for a listed impairment. [2]  The ALJ

21

22       [2] Plaintiff was previously deemed to have mental impairments meeting the criteria for
listing 12.06 (anxiety-related disorders) of 20 C.F.R. Part 404, Subpart P, Appx. 1.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01    determined that medical improvement occurred as of October 1, 2003 and that the improvement

02    was related to plaintiff's ability to work because, as of that date, she no longer had impairments

03    which met or equaled a listing.  The ALJ concluded that, as of October 1, 2003, plaintiff's

04    impairments in combination were not severe in that they did not cause more than a minimal impact

05    on plaintiff's ability to perform basic work activities, and that plaintiff's disability ended as of that

06    date.  Because the ALJ deemed plaintiff not disabled at step six for the DI claim and step five for

07    the SSI claim, she did not proceed to the final steps of the analyses.

08           This Court's review of the ALJ's decision is limited to whether the decision is in

09    accordance with the law and the findings supported by substantial evidence in the record as a

10    whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

11    than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

12    mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

13    (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

14    decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

15    2002).

16           Plaintiff argues that the ALJ erred in rejecting the opinions of two treating physicians and

17    improperly failed to find her mental impairments severe.[3]  She requests remand for an award of

18    benefits or, alternatively, for further administrative proceedings.  The Commissioner argues that

19

---

20        [3] Plaintiff argued in her opening brief that the ALJ erred in ignoring the opinions of non-examining physician Gerald Peterson.  However, in reply, plaintiff concedes that the ALJ

21    considered and rejected the opinions of Dr. Peterson.  Plaintiff states her belief, without further discussion, that the ALJ's rejection of Dr. Peterson's opinions was unwarranted.  Because there is no substantive argument related to the opinions of Dr. Peterson, this assertion is not addressed

22    herein.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  the decision is supported by substantial evidence and should be affirmed.

02      The Court has discretion to remand for further proceedings or to award benefits.  *See*

03  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

04  where "the record has been fully developed and further administrative proceedings would serve

05  no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

06      Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
       reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
07      must be resolved before a determination of disability can be made; and (3) it is clear
       from the record that the ALJ would be required to find the claimant disabled if he
08      considered the claimant's evidence.

09  *Id*. at 1076-77.  For the reasons described below, the Court finds that further administrative

10  proceedings would serve a useful purpose.

11                          Physicians' Opinions

12      In general, more weight should be given to the opinion of a treating physician than to a

13  non-treating physician, and more weight to the opinion of an examining physician than to a non-

14  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

15  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

16  and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

17  Where contradicted, a treating or examining physician's opinion may not be rejected without

18  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

19  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

20  A.   Dr. Steven Haney

21      Plaintiff first challenges the ALJ's assessment of the opinions of her treating physician Dr.

22  Steven Haney.  In considering Dr. Haney's opinions, the ALJ found as follows:

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01    Regarding the claimant's mental health impairments (which were the basis of her
      disability in 1999), it is clear that the claimant's symptoms and functioning have
02    improved greatly with medication.  In October of 2003, the claimant's psychiatrist,
      Steven T. Haney, M.D., noted that the claimant's medications were very helpful in
03    maintaining her stability.  At that visit, the claimant was alert and neutral, with normal
      psychomotor activity, with only mildly depressed mood.  She was tearful when she
04    explained that she had lost a student-teacher position.  But her thoughts were
      organized and linear, her mood stable.

05
      My conclusion that the claimant has no "severe" mental health impairments is
06    inconsistent with Dr. Haney's opinion from August of 2004 that the claimant was
      disabled.  He cited stress as the reason for two decompensations that required
07    "hospitalization," but acknowledged that the claimant had stabilized once she resumed
      her medications.  I find only two psychiatric incidents in the record that involved a trip
08    to the emergency room.  Both occurred in January of 2004, when the claimant
      presented to the emergency room for increased anxiety.  Although the claimant
09    claimed both times to be compliant with her medications, her son reported to Dr.
      Haney that the claimant had refused her medication the morning of the first
10    emergency room visit.  And once there, the claimant refused Ativan.  On both
      occasions, the claimant was found to be non-detainable.

11
      It appears clear that claimant is stable, when she takes her medications.  Dr. Haney
12    also cited difficulty with interpersonal functioning, explaining that the claimant had
      failed two student teaching trials.  I note that the claimant was attempting to teach in
13    high school, a task at which many likely would not succeed.  I do not find such a so-
      called failure sufficient to establish a continued severe mental health impairment,
14    especially in someone who successfully obtained an advanced degree as the claimant
      did.

15

16    (AR 24; internal citations to record omitted.)

17        Plaintiff notes that Dr. Haney qualified his August 2004 statement that plaintiff was stable

18    following the resumption of her medications in subsequently stating: "However, I have great

19    concerns that the stress of competitive work at any level would cause destabilization."  (AR 422.)

20    She also notes that Dr. Haney reflected in the January 16, 2004 report that her son indicated in

21    full: "*Tin thinks she has been taking her medication* although she refused to take her medication

22    this morning."  (AR 562; emphasis added.)  Plaintiff posits that because this report was dated on

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  a Friday and reflected that plaintiff had "been decompensating since Wednesday[,]" it would

02  appear that she had been decompensating for two days before she skipped her medication. (AR

03  561.) Plaintiff notes Dr. Haney's assessment on the report: "She has decompensated while taking

04  medication." (AR 562.) She argues that it is significant that her reported failure to take

05  medication and her refusal of Ativan occurred on the same day, during a severe psychotic

06  episode.[4] Plaintiff argues, therefore, that the ALJ's reliance on her alleged non-compliance with

07  her medication regimen is not supported by substantial evidence.

08      Plaintiff also rejects the ALJ's criticisms as they relate to her failed attempts at student

09  teaching and the fact that she obtained an advanced degree in teaching. She notes that the ALJ

10  ignores the fact that she previously taught high school successfully in Croatia. (AR 105, 711.)

11  Plaintiff also points to her testimony that she was able to complete her degree with the use of "lots

12  of medications" and "regular consultations with doctors, family doctor and psychiatrists" (AR

13  690-91) and the fact that she ultimately failed to earn her teaching certificate (AR 688-89). She

14  also points to Dr. Haney's opinion as to her "poor stress tolerance" and "great difficulty in

15  interpersonal functioning" (AR 422) as issues that would be far more important in teaching high

16  school students than in attending school.

17      Plaintiff adds that the ALJ failed to address other evidence from Dr. Haney. (*See*, *e.g.*, AR

18  548, 550, 552 & 554 (Dr. Haney opined in April, May, July and August 2004 that, although

19  "relatively stable[,]" plaintiff had "very poor stress tolerance."); AR 556 (March 19, 2004: "[I]t

20  should duly be noted that Senka has great difficulty with stress and whether or not she is going

21  _____

22      [4] A review of the record reveals that plaintiff refused Ativan on January 15, 2004 and that
    her son reported that she refused to take her medication on January 16, 2004. (AR 483, 562.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 | to be able to navigate the stress of school remains to be seen.  She has difficulty with interpersonal

02 | interactions, particularly with irritability.  She has gotten sick a number of times in the past in

03 | response to stress and she truly doesn't function well when sick.  I've encouraged her to reapply

04 | for disability on the basis of her poor stress tolerance because as much as she wants to be normal

05 | and function in the normal world, I'm not encouraged that she is going to be able to do so."); AR

06 | 557-58 (March 5, 2004: plaintiff reported problems with mood instability and irritability and Dr.

07 | Haney opined: "She is hypomanic and not functioning well at all."); AR 561-62 (January 2004:

08 | reflecting "periods of intense anxiety[,]" and delusions, and episodes of decompensation "while

09 | taking medication."), AR 572 (April 2003: "She is relatively stable but she would have poor stress

10 | tolerance.")) Plaintiff asserts that the ALJ did not address Dr. Haney's repeated opinion as to her

11 | low stress tolerance.

12 |        Finally, plaintiff contends that the ALJ overlooked the side effects of her medications,

13 | including drowsiness, fatigue, and slow cognitive and psychomotor functioning.  (AR 553-56

14 | (April 16, 2004 report from Dr. Haney).)  She notes her testimony at the hearing as to some of

15 | these symptoms.  (AR 700.)

16 |        The Commissioner asserts that Dr. Haney's conclusion that plaintiff decompensated while

17 | taking her medication is not supported by the record.  (*See*, *e.g.*, AR 422 (noting in August 13,

18 | 2004 letter that plaintiff was "taking her medication again and is stable in regards to her

19 | symptoms.")) He argues that the ALJ need not have separately addressed each sentence in Dr.

20 | Haney's August 16, 2004 letter, including his speculation that the stress of employment would

21 | cause destabilization.  Also, with respect to stress tolerance, the Commissioner notes that Dr.

22 | Haney's reports also indicated that plaintiff was relatively stable or doing better and failed to

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  provide examples of what Dr. Haney relied on in opining as to plaintiff's allegedly low stress

02  tolerance.  The Commissioner also points to plaintiff's testimony, as acknowledged by the ALJ

03  earlier in the decision (AR 22), that she was able to earn her master's degree due to her

04  intelligence, education, and upbringing (AR 690-91).

05          The Court concludes that the ALJ should have contacted Dr. Haney for clarification of his

06  opinion that plaintiff destabilized while taking medication.  An ALJ has an obligation to recontact

07  a treating physician or psychologist when the evidence received is inadequate for a determination

08  of disability.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e)  ("When the evidence we receive from

09  your treating physician or psychologist or other medical source is inadequate for us to determine

10  whether you are disabled, we will need additional information to reach a determination or a

11  decision.")  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow

12  for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"

13  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoted source omitted).

14          In this case, two separate documents from the first destabilization in January 2004 reflect

15  the report of medication compliance.  (*See* AR 491 (January 16, 2004 emergency room document:

16  "Sts she is taking meds.");[5] AR 610 (January 16, 2004 on-call report to mental health center:

17  "Reports medication compliance.")) As argued by plaintiff, the record reflects that she had begun

18  to destabilize prior to her son's report that she had refused medication.  The fact that she refused

19  medication, including the offer of Ativan at the hospital, in the midst of a psychotic episode does

20

21          [5] The documentation from plaintiff's first January 2004 destabilization includes a report
    from Valley Medical Center dated January 15, 2006 and reports from Harborview Medical Center
22  dated January 15, 2004 and January 16, 2004.  (AR 483-99.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01   not seem at all unusual or indicative of prior non-compliance with her medication regimen.

02   Additionally, a report from plaintiff's January 22, 2004 emergency visit reflects her continued

03   decompensation while taking medication:

04   According to son, she continues to be decompensated, agitated, restless, pacing all
     the time, keeping the family up at night as she is unable to sleep and walks around at

05   night. The family is afraid of her unpredictable anger as she has a labile affect. She
     is taking her medications but only because the son supervises her taking the meds and

06   directs her to do so. Today, in the session, Senka appeared preoccupied, with labile
     affect. She became angry at something I said and walked out of the session and paced

07   outside my office.

08   (AR 608.)   If anything, the evidence largely supports Dr. Haney's conclusion that plaintiff

09   destabilized while taking her medication.   However, to the extent the ALJ found the evidence

10   ambiguous, he should have contacted Dr. Haney for clarification.

11       The ALJ also insufficiently addressed the issue of plaintiff's stress tolerance.   The

12   Commissioner's arguments on this issue are largely post hoc rationalizations.  The ALJ mentioned

13   stress only once in her discussion of Dr. Haney's opinions, stating that Dr. Haney "cited stress as

14   the reason for" plaintiff's two decompensations.   (AR 24.)   As noted by plaintiff, although

15   acknowledging she was back on medication and stable, Dr. Haney opined that he nonetheless had

16   "great concerns that the stress of competitive work at any level would cause destabilization." (AR

17   422.) This is consistent with his repeated findings that, although relatively stable, plaintiff had low

18   stress tolerance.  Additionally, although plaintiff's ability to function at a high level is supported

19   by the completion of her master's degree, the issue of her stress tolerance is perhaps more directly

20   relevant to her ability to perform basic work activities, as demonstrated by her inability to succeed

21   at student teaching and, consequently, to obtain her teaching certificate.

22   / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01        However, even if it may be said that the ALJ erred in his assessment of the opinions of Dr.

02  Haney, it does not necessarily follow that his opinions should be credited as true.  *Compare*

03  *Lester*, 81 F.3d at 830-34  ("Where the Commissioner fails to provide adequate reasons for

04  rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a

05  matter of law.'"; finding that, if doctors' opinions and plaintiff's testimony were credited as true,

06  plaintiff's condition met a listing) (quoting  *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

07  1989)), *with Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (courts retain flexibility in

08  applying the "'crediting as true' theory."; remanding for further determinations where there were

09  insufficient findings as to whether plaintiff's testimony should be credited as true).  In this case,

10  the ALJ did not proceed to the steps of the analysis which would address plaintiff's ability to

11  perform either her past relevant work or other types of work.  Accordingly, further proceedings

12  may serve a useful purpose.  For this reason, the Court should direct the ALJ to contact Dr. Haney

13  for clarification of his opinions, reassess those opinions and the medical record, and proceed to

14  the remaining steps of the DI and SSI analyses.

15  B.   Dr. Finkelstein

16        Plaintiff also challenges the ALJ's assessment of the opinions of treating physician Claudia

17  Finkelstein.  The ALJ rendered the following assessment of the opinions of Dr. Finkelstein:

18        In January of 2006, the claimant presented to a new doctor, Claudia A. Finkelstein,
          M.D.  The claimant's self-report about her mental health symptoms was more or less

19        stable.  The following month, this new physician opined that the claimant was still
          disabled from her mental health symptoms and fibromyalgia.  I decline to give

20        significant weight to this opinion, however, for the following reasons.  First, the
          doctor's letter did not address the claimant's educational achievements or the fact that

21        the State recognized that she was capable of being a caretaker for her elderly and ill
          mother.  Second, to support her opinion, the doctor cited "recurrent hospitalizations

22        for odd behavior."   I note that Dr. Finkelstein failed to state when these

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01   hospitalizations occurred.  The issue in this case is not whether the claimant was ever
02   disabled from her symptoms, but rather whether she experienced medical
     improvement by October 1, 2003.  The evidence from that time only mentions two
03   emergency room visits in January of 2004, approximately two weeks apart, and no
     psychiatric admissions.  Both times the claimant was found not to be detainable.  As
04   noted above, there is a strong implication that the claimant was not taking her
     medications before these visits.  I also note that Dr. Finkelstein expressed her opinion
05   after treating the claimant for less than one month.  I find that the medical evidence
     of record, when viewed as a whole shows that the claimant's impairments had
06   dramatically improved by October 1, 2003 and remained improved when the claimant
     was on her medication.  For that reason I find Dr. Finkelstein's opinion to be
07   inconsistent with the evidence and decline to give it much weight.  See 20 C.F.R. §§
     404.1527(d)(4), 416.927(d)(4) (explaining that the more consistent an opinion is with
     the record as a whole, the more weight it is given).

09   (AR 25; emphasis in original and internal citations to record omitted.)

10        Plaintiff rejects the ALJ's reasoning as it relates to her educational achievements for the

11   same reasons as discussed above with respect to Dr. Haney.  She also rejects the ALJ's reliance

12   on her part-time work as a caregiver, noting that she earned less than $500.00 per month while

13   serving in that role.  *See Grant v. Social Sec. Admin*., 17 F. Supp. 2d 975, 985 (D. Neb. 1998)

14   ("While the ALJ was entitled to have the vocational expert fully consider Grant's mowing work,

15   at the same time the ALJ was not entitled to have the expert ignore Grant's undisputed symptoms

16   of organic mood disorder and depression.") and 20 C.F.R. § 404.1572 (defining SGA).  Plaintiff

17   further argues that, in addition to citing her recurrent hospitalizations, Dr. Finkelstein noted that

18   she spent "long periods of time really paralyzed, not moving, and having difficulty getting her tasks

19   of daily living done[,]" and had "recent worsening of her depression[,]" as well as fibromyalgia

20   pain.  (AR 651.)  Additionally, plaintiff again challenges the ALJ's assertions as to her alleged non-

21   compliance with her medication regimen and asserts that the evidence reflects that she was

22   hospitalized on at least one of the occasions in which she went to the emergency room in January

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  2004. (*See* AR 422 (Dr. Haney's August 13, 2004 letter states: "She had to be hospitalized at

02  Valley Hospital in Renton and at Harborview at that time.") and AR 562 (Dr. Haney's January 16,

03  2004 report states: "She will be hospitalized and seen once she is discharged."))

04       The Commissioner reiterates the ALJ's findings and offers several different arguments in

05  opposition to those offered by plaintiff. (*See* Dkt. 24 at 8-11.)  However, it can be said without

06  examining each of those arguments that the ALJ's reasoning with respect to Dr. Finkelstein was

07  deficient.

08       First, the ALJ inappropriately focused on Dr. Finkelstein's reference to recurrent

09  hospitalizations to the exclusion of the remainder of the letter.  Dr. Finkelstein stated:

10       She has had recurrent hospitalizations for odd behavior including screaming, walking
         into traffic, and socially isolating herself.  At this point, I believe she is about as good
11       as she gets but I believe she is still very disabled.  She spends long periods of time
         really paralyzed, not moving, and having difficulty getting her tasks of daily living
12       done.  She has had recent worsening of her depression, does not seem to be having
         psychotic features at this point or current suicidal ideation but I think that she will
13       require ongoing care.

14  (AR 651.)  Reading the record as a whole, it is apparent that Dr. Finkelstein's reference to

15  recurrent hospitalizations – including incidents in which she walked into traffic – considered

16  plaintiff's entire history. (*See*, *e.g.*, AR 173-74 (August 1997 psychiatric discharge summary

17  reflecting reports of plaintiff walking in traffic); AR 205 (December 1998 psychiatric discharge

18  summary indicating hospitalization occurred upon "increasing disorganization and wandering in

19  traffic.")) As asserted by plaintiff, the ALJ made no mention of Dr. Finkelstein's statements

20  regarding plaintiff's current mental state.

21       Second, for the reasons discussed above, the ALJ erred either in determining that plaintiff

22  had decompensated due to her failure to take her medications or in failing to seek further

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  information on this subject. As such, this reasoning for rejecting the opinions of Dr. Finkelstein

02  is also problematic. Additionally, although it may be relevant that Dr. Finkelstein failed to address

03  plaintiff's educational achievements or her care for her mother, the ALJ could have contacted Dr.

04  Finkelstein for clarification of her opinions in light of those factors.

05       Finally, although Dr. Finkelstein may have been treating plaintiff for only a short period

06  of time when she rendered her opinions in the February 24, 2006 letter, her opinions are consistent

07  with plaintiff's long-term treating physician and the record as a whole. Additionally, while the ALJ

08  described Dr. Finkelstein's treatment as spanning only a single month, it actually approached a

09  two-month period at the time of her letter. (*See* AR 630 (initial record from Dr. Finkelstein dated

10  January 9, 2006) and AR 651 (February 24, 2006 letter from Dr. Finkelstein).)

11       Because the record does not necessarily support an award of benefits, Dr. Finkelstein's

12  opinions should not be credited as true. Instead, as with Dr. Haney, the ALJ should be directed

13  to reassess the opinions of Dr. Finkelstein and, if necessary, to contact this treating physician for

14  clarification of her opinions.

15                              Severity of Mental Impairments

16       "An impairment or combination of impairments is not severe if it does not significantly limit

17  [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521,

18  416.921 (as cited in §§ 404.1594(f)(6), 416.994(b)(5)(v)). "Basic work activities" refers to "the

19  abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An

20  impairment or combination of impairments can be found 'not severe' only if the evidence

21  establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability

22  to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  (SSR) 85-28).  This inquiry "is a de minimis screening device to dispose of groundless claims."

02  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect"

03  of an individual's impairments in considering severity.  *Id*.

04       In this case, in addition to the discussions related to plaintiff's treating physicians, the ALJ

05  stated:

06       I also note that the records are replete with evidence that she has not been compliant
         with her appointments, and she has not maintained contact with her mental health
07       providers.  At times she has refused to take her medications, and her symptoms
         worsened.  But her providers have observed that when she took her medications, her
08       mood improved.

09       I conclude that the claimant's mental health impairments improved to a non-severe
         level.  The doctors who continued to promote her disabled mental status relied in
10       large part on the claimant's self-report rather than her actual successful function.

11  (AR 25; internal citations to record omitted.)

12       As discussed above, the evidence does not appear to support the conclusion that plaintiff

13  decompensated as a result of her failure to take medication.  Further, while she was deemed stable

14  for long periods by Dr. Haney, he nonetheless also found her to have a low threshold for stress.

15  Consistent with this assessment and the record as a whole, the SSA concluded upon

16  reconsideration that plaintiff had a severe mental impairment due to her "moderate limitations in

17  her ability to interact with the public on a constant basis and [the fact that she] would do best in

18  situations where she could work independently."  (AR 47, 49.) [6]  Also, while the record does

19  contain evidence that plaintiff missed appointments, it likewise reflects her attendance at numerous

20  _____

21       [6] This previous finding of the SSA is likewise consistent with the opinion of DSHS
    reviewing physician Gerald Peterson, who assessed a moderate limitation in plaintiff's ability to
22  maintain social functioning. (AR 365, 377.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 counseling sessions and medical appointments. (   *See generally* AR 534-624.)   There is no

02 suggestion from a medical provider that plaintiff was perceived as being non-compliant with her

03 treatment. (*Id.*)

04       In sum, the Court does not find the ALJ's finding as to the non-severity of plaintiff's

05 mental impairments to be supported by substantial evidence.   The ALJ should be directed to

06 reconsider the severity of plaintiff's mental impairments on remand.

07                                        <u>**CONCLUSION**</u>

08       For the reasons set forth above, this case should be REMANDED for further

09 administrative proceedings.   On remand, the ALJ should reassess plaintiff's claims, considering

10 the deficiencies outlined in this Report and Recommendation.   A proposed order accompanies

11 this Report and Recommendation.

12       DATED this <u>9th</u> day of January, 2008.

13

14                                        Mary Alice Theiler
                                          United States Magistrate Judge

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -17